# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

KYLE W.,[1]
o.b.o. T.D.W.

      Plaintiff,

v.

ANDREW M. SAUL,[2]
Commissioner of Social Security,

      Defendant.

CIVIL ACTION

No. 18-1269-JWL

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security denying Supplemental Security Income (SSI) benefits to his minor son pursuant to sections 1602, and 1614(a) of the Social Security Act, 42 U.S.C. §§ 1381a, and 1382c(a) (hereinafter the Act). Finding no error in the Administrative Law Judge's (ALJ) decision, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

---

[1] The court makes all its "Memorandum and Order[s]" available online. Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.
[2] On June 17, 2019, Andrew M. Saul was sworn in as Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Mr. Saul is substituted for Acting Commissioner Nancy A. Berryhill as the defendant. In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

## I. Background

An application for SSI was filed for Plaintiff's minor son on December 16, 2014. (R. 13, 182-86). After exhausting administrative remedies before the Social Security Administration (SSA), Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Plaintiff argues that the ALJ erroneously concluded that his son has "less than marked limitations" in the functional equivalence domains of interacting and relating with others and of caring for himself, and that she should have found at least a marked limitation in both of these areas. (Pl. Br. 5-6).

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether she applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). "Substantial evidence" refers to the weight of the evidence. It is more than a scintilla, but it is less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting

2

Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988)). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses a three-step sequential process to evaluate a minor's claim for disability. 20 C.F.R. §§ 416.924, 416.924a, 416.924b, 416.926a; Briggs, ex rel. Briggs v. Massanari, 248 F.3d 1235, 1237 (10th Cir. 2001). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (quoting Lax, 489 F.3d at 1084). In these three steps, the Commissioner determines whether the minor claimant is engaged in substantial gainful activity, whether he has a severe impairment or combination of impairments, and whether the severity of his impairment(s) meets, medically equals, or functionally equals the Listings (20 C.F.R., Pt. 404, Subpt. P, App. 1). Briggs, 248 F.3d at 1237 (citing 20 C.F.R. § 416.924(a)). As relevant here, in considering functional equivalence, the ALJ considers how the claimant "functions in his activities in terms of six domains: '(i) Acquiring and using information;

3

(ii) Attending and completing tasks; (iii) Interacting and relating with others; (iv) Moving about and manipulating objects; (v) Caring for yourself; and, (vi) Health and physical well-being.'" Briggs, 248 F.3d at 1238 (quoting 20 C.F.R. § 416.926a(b)(1)(i)-(vi)). The Commissioner will determine that a child's condition functionally equals the listings if he has marked limitations in two domains or an extreme limitation in one domain. 20 C.F.R. § 416.926a(d).

## II. Discussion

Plaintiff argues the level of handholding T.D.W. requires "to understand, navigate, and get through social situations poses much more than a less than marked limitation." (Pl. Br. 8). He argues that in 2016 T.D.W. was re-evaluated by the Kansas Department for Aging and Disability Services and found "eligible for placement in an immediate care facility based on his developmental delay," and that, "The State of Kansas would not have found T.D.W. eligible for essentially institutional care if he only suffered less than marked limitations." Id. (citing R. 398). Plaintiff recites record evidence including observations of Alex Bruce,[3] "a social worker," id., and argues that:

> A less than marked limitation is inconsistent with the high degree of supervision T.D.W. requires and his inability to be alone at home or in the community more than briefly. As an adolescent, he shouldn't need his parents to remind him regularly to address his hygiene. And, he shouldn't need a case worker to come to his home and convince him to go out or teach him basic life skills.

---

[3] The ALJ refers to Alex Bruce as "Mr. Bruce" (R. 19), and Plaintiff refers to Alex Bruce as "her," and "she." (Pl. Br. 8, 10). At the hearing T.D.W. referred to her as "she," and his mother referred to her as "she." (R. 47-48, 57-59). The record does not reveal Alex's gender, so the court will assume T.D.W. and his mother are familiar with Ms. Bruce and will refer to her as Ms. Bruce.

4

Id. at 9.

He argues that in evaluating the area of caring for yourself, "the ALJ's analysis was simply wrong." (Pl. Br. 9). He argues that "the ALJ underrepresented T.D.W.'s hygiene deficits," id., and that "T.D.W., an adolescent, is unable to even manage being asked to do a chore without absconding." Id. at 10. He argues it was error for the ALJ to rely on the opinion of the state agency psychologists because their opinions are not accompanied by thorough written reports or supported by the record and did not recognize T.D.W.'s eligibility for an immediate care facility or his need for daily caseworker support. Id. at 11. Moreover, he points out it is the ALJ's responsibility, not the psychologist's, to assess T.D.W.'s limitations.

The Commissioner argues that the evidence supports the ALJ's findings. (Comm'r Br. 8). He argues that the ALJ considered the evidence appealed to by Plaintiff and reasonably reached a different conclusion, noting that T.D.W. "interacted with friends and family, was not noted to be a behavioral problem at school, and his case worker recognized that some of his issues were merely typical of an adolescent boy of his age." Id. at 9 (citing R. 18-19, 24-25, 454, 466, 478). He argues, "Even if the record could support a conclusion that T.D.W. had marked limitations in this domain, that is still an insufficient basis to reject the ALJ's finding where—as here—she supported it with substantial evidence." Id. (citing Lax, 489 F.3d at 1084).

Similarly, the Commissioner argues the ALJ's findings regarding the domain of caring for yourself are reasonable and supported by the record. He argues the ALJ recognized T.D.W. had deficits in this domain but explained the reasons he found them

5

not to result in marked limitations.  Id. at 10.  He argues that the ALJ considered the evidence to which Plaintiff appeals, again directs the court to Lax, and argues that even if the court found one of the domains to result in marked limitation that would not change the result of the decision below because the regulations require marked limitations in two domains before a claimant's condition may be found functionally equal to the Listings.  (Comm'r Br. 10).

In his Reply Brief, Plaintiff reiterates his earlier arguments and citation to certain evidence in the record and argues that these facts carry the day rather than the ALJ's "citation to isolated statements" which have resulted in her "missing the forest for the trees."  (Reply 1).  He argues, "The average adolescent does not require two case managers to ensure he does not run off, ensure he showers, and ensures [sic] he learns basic life skills," and "is able to be along by himself and around younger siblings without supervision.  To suggest that these facts only constitute a less than marked limitation is simply not reasonable."  Id. 2-3 (citations omitted).  He argues that the opinion of the state agency psychologist, Dr. Bergman-Harms is deficient because he did not address the evidence mentioned in Plaintiff's reply brief, he did not cite to the need for daily case management and for assisted living, and his discussion of interacting and relating with others focused on speech issues rather than T.D.W.'s inability to develop friends and need to become more independent and be more vocal without assistance.  Id. at 2.  He concludes his argument, "This is not a matter of asking the Court to reweigh the facts.  The issue is that the ALJ's interpretation of the evidence is such an outlier that no reasonable factfinder would have reached a similar conclusion."  Id.

6

### A. The ALJ's Findings

The ALJ summarized her consideration of the evidence and explained her evaluation of the opinion evidence. (R. 18-20). She accorded only some weight to the opinion of T.D.W.'s case manager, Karen Rodriguez, because it was more limiting than the other record evidence and was only partially supported. Id. at 19. She accorded only some weight to the two opinions of Ms. Pflughoeft, T.D.W.'s teacher because "his school records and his case management records reflect improvement over time, with increased independent functioning." Id. She explained her evaluation of Ms. Bruce's opinion:

> A letter was also submitted [by] Alex Bruce, a support worker for the claimant (Exhibit 18E). The date of this letter and M[s]. Bruce's qualifications were not provided. M[s]. Bruce indicated that the claimant must be prompted to complete various activities, tells inappropriate jokes, and trips siblings when they are "bugging" him (Exhibit 18E, p.2). Other "problems" described by M[s]. Bruce appear largely typical of teenagers - eating quickly, not answering a cashier, sometimes being unwilling to engage in a particular activity - and do not suggest notable deficits. Thus, this opinion received only some weight in assessing the claimant's limitations.

Id. She accorded some weight but not significant weight to the opinions of T.D.W.'s mother because they suggest different levels of functioning and behavior at home than school and do not "present a complete picture of his functioning." Id. Finally, she discussed her consideration of the state agency psychologist's opinions:

> In October 2015, E. Bergmann-Harms, Ph.D., reviewed the claimant's records and provided an opinion in this case (Exhibit 5A). The undersigned notes that this opinion was largely consistent with the record, with a few exceptions, as discussed below. Therefore, it received significant weight. A prior, similar, opinion was also provided in 2015 by Robert McRoberts, Ph.D., and Heide Schafer, M.S., on behalf of the State Disability Determination Service (Exhibit 3A). This opinion contained the same

7

opinions, and it was weighed as discussed in relation to Dr. Bergmann-
Harms's opinion.

(R. 20).

The ALJ then explained how she applied the evidence to each of the six domains for evaluating functional equivalence. Id. at 20-28. She found Plaintiff "has less than marked limitations in interacting and relating with others." (R. 24) (underline omitted).

> In 2015, the claimant's case manager noted that he can be understood by those who know him well most of the time and by others some of the time (Exhibit 8F, p.8). She noted he has no problem hearing, and no information was provided on the nature of this speech issue (Exhibit 8F, p.8). She also indicated the claimant had some communication issues, alleging that he could not answer the phone or make phone calls, deliver phone messages, repeat stories, tell jokes or riddles accurately, or use sentences with "because," "what if," or "should have been" (Exhibit 8F, p.9). She also claimed that his social skills were "significantly lacking" (Exhibit 8F, p.12). Her records indicate that the claimant was reported to have a problem with hitting or kicking his siblings (Exhibit 8F, p.13).
>
> In contrast, his 2015-2016 IEP [(Individualized Education Plan)] indicates that he enjoyed conversing with peers and staff members and he was a leader in the resource room (Exhibit 10F, p.7). However, his IEP did note that his autism resulted in a speech and communication problem that did make it difficult to understand him at times (Exhibit 10F, p.9).
>
> In 2014, Ms. Pflughoeft alleged the claimant had no more than a slight problem with interacting and relating, and he had only slight problems expressing himself and using adequate vocabulary (Exhibit 6E, p.6). In her subsequent opinion, she alleged worsening, although she noted the claimant was receiving speech services every week (Exhibit 10E, p.9). No explanation for this worsening appears in the record. In the initial opinion, she indicated someone familiar with the claimant could understand almost all speech with repetition or rephrasing, and others could understand speech on unfamiliar topics half of the time (Exhibit 6E, p.7). Contrary to her discussion of the claimant's interaction, she noted improvement in his speech by the time of her second opinion (Exhibit 10E, p.10).
>
> The claimant's mother also indicated that she was able to understand the claimant most of the time, and those who did not know him could understand him some of the time (Exhibit 7E, p.6). She also alleged he was

8

> unable to answer a phone, deliver messages, repeat a story, tell a joke or riddle, talk with friends, or use sentences with "because," "what if," or "should have been" (Exhibit 7E, p.7).
>
> She also opined that the claimant could not make friends and did not have friends his own age (Exhibit 7E, p.9). His school records indicate he was able to interact appropriately with peers, although some problems with social judgment are suggested by his treatment providers and support worker. As a result, he does appear to be able to interact with others, although he may require assistance maintaining appropriate behavior.
>
> Overall, the record indicates the claimant's speech is largely intelligible, and he is able to communicate with family, friends, teachers and peers. He does have some difficulty making himself understood by strangers, but this problem appears limited in scope and improved with repetition.
>
> The combination of his speech and behavioral issues do suggest a limitation is present in this area. Dr. Bergmann-Harms reviewed the claimant's records in October 2015 and also concluded a less than marked limitation was present in this area (Exhibit 5 A). The undersigned concurs with this assessment, as it is consistent with the record.

(R. 24-25). She also found less than marked limitation in T.D.W.'s ability to care for himself. (R. 27).

> In 2015, the claimant's case manager opined that he was unable to take care of personal hygiene, wash or put away his clothes, prepare a meal, get to school on time, study and do his homework, use public transportation by himself, accept criticism or correction, keep out of trouble, obey rules, or avoid accidents (Exhibit 8F, p.11). She also indicated that the claimant would reportedly isolate himself and he has problems managing frustration appropriately (Exhibit 8F, p.14).
>
> In her 2014 opinion, Ms. Pflughoeft opined that the claimant has slight problems in multiple areas of self-care, and he becomes frustrated and has "mild shutdowns" due to problems with emotional regulation (Exhibit 6E, p.8). Again, her 2015 opinion reflects worsening, but this is not supported by any medical evidence (Exhibit 10E, p.11 ).
>
> The claimant's mother alleged that he was not able to take care of personal hygiene, wash and put away his clothes, cook a meal, use public transportation, and accept criticism or correction (Exhibit 7E, p.10). She indicated he required prompts for other activities.

9

> Overall, the claimant does have a deficit in this area. However, the extent is limited. His school records indicate few problems beyond some "mild" problems with emotional regulation and his IEP and treatment notes indicate he was able to manage himself appropriately the majority of the time. However, he did elope once, and he did struggle with some hygiene and self-care activities, although his grooming was generally described as appropriate.
>
> Dr. Bergmann-Harms reviewed the claimant's records in October 2015 and also concluded a less than marked limitation was present in this area (Exhibit 5A). The undersigned concurs with this assessment, as it is consistent with the record.

(R. 27-28).

### B.      Analysis

When considered in light of the ALJ's summarization of the evidence and evaluation of the opinion evidence, and her analysis of the individual domains as quoted above, Plaintiff's arguments demonstrate no error in the decision below. Plaintiff argues that the ALJ mischaracterized T.D.W.'s level of impairment in the domain of interacting and relating because his IEP shows significant delays in self-initiation, understanding how to interact in a myriad of social situations, and independently developing and maintaining friends. However, the ALJ discussed those very issues and the evidence relating to them and explained how she had accommodated them.

Plaintiff argues that the State of Kansas's evaluation of T.D.W. requires a finding of marked limitation because it found him "eligible for essentially institutional care" when it found him "eligible for placement in an immediate care facility based on his developmental delay." (Pl. Br. 8). But, Plaintiff's argument makes more of the state's re-evaluation than can be supported by the record. The first "Re-Evaluation Notice" from

the Kansas Department of Aging and Disability Services is dated October 22, 2014. (R. 265). The notice states that T.D.W. "is eligible for an Intermediate Care Facility (ICF/IDD) and the Home and Community Based Services for Intellectual and Developmental Disabilities (HCBS/IDD)." (R. 265). It states that it is an "Annual Re-Evaluation," and notes that T.D.W.'s plan of care was reviewed and found current and adequate. Id. The "Re-Evaluation Notice" upon which Plaintiff relies is dated October 12, 2016 and contains an identical eligibility statement but does not indicate whether the plan of care was reviewed and found current or adequate. The court found no other annual re-evaluation notices in the record.

Plaintiff's argument that T.D.W. is eligible for "essentially institutional care" does not seem to be an accurate characterization. The notice appears to be confirmation that funding is approved for services to be provided at state expense for either care at an intermediate care facility, if necessary, or through home and community-based services, if appropriate. (R. 397) ("Home and Community-Based Services … are an alternate" to Intermediate Care Facilities). Moreover, Plaintiff refers throughout his Brief to the fact that the state found T.D.W. eligible for an immediate care facility. (Pl. Br. 8, 9, 10, 11, 12). While the court presumes this is a typographical error or an error in reading the Re-Evaluation Notices, there is an order of magnitude difference between the approval for intermediate care if necessary and the need for immediate care.

For the entire period at issue here, T.D.W. was living at home, and although it is not entirely clear, appears to have had the services of a case manager and those of a community support worker for approximately 90 hours a month during the school year

11

and 155 hours a month during the summer. (R. 58-59). T.D.W. is also in special education in which he has "two classes that are a class within a class." (R. 53). In school, he is taking classes at grade level, has para-professional support, and is getting C's. Id. at 53-54. This is not the picture of a teen who is eligible to be "institutionalized." There is no evidence in the record describing the eligibility requirements for the state program at issue here, and Plaintiff cites no authority explaining how that program works. Intellectual and developmental disorders, at least as understood pursuant to the Social Security Act, cover a broad range of impairments, for which there are specific criteria to determine whether their severity is disabling in children, and not all children with these impairments are disabled within the meaning of the Act. I.e., 20 C.F.R., Pt. 4, Subpt. P, App. 1, §§ 112.00, 112.05, 112.10, 112.11 (2017).

Plaintiff's appeal to the opinion of Ms. Bruce is likewise unavailing. The ALJ addressed Ms. Bruce's opinion and discounted it on several bases. (R. 19). The date of the opinion, and Ms. Bruce's qualifications were not included,[4] and some "'problems' described by M[s]. Bruce appear largely typical of teenagers." Id. Moreover, in evaluating T.D.W.'s impairments, she considered the problems alleged by Ms. Bruce.

Regarding the domain of caring for oneself, Plaintiff argues that T.D.W. required many prompts and extensive supervision to get him to shower or to do a chore, and he

---

[4] Although Plaintiff refers to Ms. Bruce as "a social worker" (Pl. Br. 8), the record does not bear that out, and the ALJ is correct that Ms. Bruce's letter opinion does not include her qualifications. (R. 400).

would wear clothing inappropriate for the weather. (Pl. Br. 9-10). Plaintiff also argues that T.D.W.'s "tendency to wonder off [sic] when asked to do something" demonstrates a marked limitation in this domain. Id. at 10. He argues that T.D.W. wanders off excessively for an average teen because in 2016 he "wandered off 24 times in January, 8 times in February, 8 times in March, 9 times in April, 7 times in May, 6 times in June, and 5 times in July." Id. Once again, the ALJ considered these facts and as quoted above explained her determination that T.D.W. did not have a marked limitation in this domain.

Plaintiff argues that if a reasonable factfinder had "determined T.D.W.'s need for supervision to get through most days warranted marked limitations in relating and interacting with others and caring for himself," she "would likely not have given any weight to the State [sic] agency opinion" of Dr. Bergman-Harms. (Pl. Br. 11). In that Dr. Bergman-Harms opined that T.D.W. has less than marked limitations in these domains, Plaintiff is correct that a factfinder finding marked limitations in these domains would have given little if any weight to that opinion. But, as noted above the ALJ in this case found less than marked limitations in these domains and explained her reasons for doing so, one of which was that she agreed with Dr. Bergman-Harms's opinion. (R. 24-25, 27-28). Moreover, she explained her reason for according significant weight to Dr. Bergman-Harms's opinion. Id. at 20.

In his Reply Brief, Plaintiff argues that it is simply not reasonable to find less than marked limitations in these domains based on the record evidence. (Reply 2). He ends his case by arguing that he is not asking the court to reweigh the facts, but "the ALJ's interpretation of the evidence is such an outlier that no reasonable factfinder would have

13

reached a similar conclusion." Id. By its very terms this argument asks the court to substitute Plaintiff's "reasonable" conclusion for the unreasonable conclusion of the ALJ. That is reweighing the evidence and it is a proposition the court is forbidden from embracing. Bowman, 511 F.3d at 1272; Hackett, 395 F.3d at 1172. The real question is whether the ALJ applied the correct legal standard, Lax, 489 F.3d at 1084, and whether "such relevant [record] evidence as a reasonable mind might accept as adequate to support a conclusion" supports the ALJ's determination. Perales, 402 U.S. at 401; see also, Wall, 561 F.3d at 1052; Gossett, 862 F.2d at 804. She did, and it does.

As this court frequently points out, a plaintiff must demonstrate the error in the ALJ's rationale or finding; the mere fact that there is evidence which might support a contrary finding will not establish error in the ALJ's determination. "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. We may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." Lax, 489 F.3d at 1084 (citations, quotations, and bracket omitted); see also, Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966) (same).

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated July 19, 2019, at Kansas City, Kansas.

                                          s:/ John W. Lungstrum
                                          **John W. Lungstrum**
                                          **United States District Judge**